UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                   :

GERALD NELSON,                     :

                          :     **MEMORANDUM DECISION**
                   Plaintiff,     :     **AND ORDER**
                          :

         - against -       :     15-cv-672 (BMC)
                          :

AMALGAMATED TRANSIT UNION LOCAL  :
1181-1061, AFL-CIO, *et al.*,     :

                          :

              Defendants.
-------------------------------------------------------- X

**COGAN**, District Judge.

      Plaintiff *pro se* commenced a state court proceeding challenging the terms of an agreement between his union and employer as to the amount of back pay he was owed pursuant to an arbitration award in his favor. The union and employer (along with one representative of each, who have also been sued) removed the action to this Court and have separately moved to dismiss the case. Plaintiff also moves for reconsideration of an earlier Order denying his motion to remand. The motions to dismiss are granted and the motion for reconsideration is denied for the reasons set forth below.

BACKGROUND

      Plaintiff's employer, defendant MV Transportation, Inc., ("MVT") terminated his employment. Plaintiff's union, Local 1181, grieved the termination before an arbitrator pursuant to the procedure in the collective bargaining agreement ("CBA") between plaintiff's union and employer. The grievance procedure in the CBA provided, among other things, that in event of an arbitration, "[t]he decision of the arbitrator shall be final and binding upon both parties."

The arbitrator directed plaintiff's reinstatement and stated that plaintiff should be "made whole" by the award. Local 1181 and MVT then requested a supplemental award as to the computation of back pay. The arbitrator issued a supplemental award, stating as follows:

> The phrase, "make whole" or "made whole", is synonymous with the phrase "full back pay". In labor relations, back pay is a term of art and means the amount the employee would have earned had he/she not been discharged less what the employee did earn, or should have earned with a reasonable effort to find other suitable employment, during the period of the outage. Where an employee receives income from any source that is in any way related to the loss of employment, as opposed to passive income from savings or other investments, that amount constitutes a deduction in the calculation of a make whole remedy.

Since the arbitrator set forth only this concept, and did not perform an actual calculation, Local 1181 and MVT negotiated an agreement, the "Back Pay Agreement," to implement the concept outlined by the arbitrator. The Back Pay Agreement provided for the payment of gross back wages, less unemployment payments that plaintiff had received and his withheld taxes, within 10 days.

On September 29, 2014, plaintiff (as "petitioner") commenced this case in state court as a special proceeding under N.Y. C.P.L.R. Article 75. The original petition named only Local 1181 and MVT as respondents. This original petition was never served. Plaintiff filed an amended notice of petition on January 21, 2015. In the amended petition, he added as respondents (defendants here) Jessica D. Ochs, Esq., an outside counsel for Local 1181who had represented Local 1181 in connection with his grievance, and Michalaire Phanor, the General Manager of MVT. All defendants removed the action to this Court based on federal question jurisdiction, asserting that that the amended petition effectively asserted claims under, among other federal statutes, the National Labor Relations Act, 29 U.S.C. § 141, and section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Defendants then moved to dismiss the petition. While those motions were pending, plaintiff moved to remand the case on the ground, *inter alia*, that there was no subject matter jurisdiction. I denied his motion, finding that federal labor law completely preempted his claims and formed a basis for federal question jurisdiction.

The amended petition is not clear as to its claims, but all of those claims revolve around one central contention – that defendants wronged plaintiff – call it fraud, breach of contract, or whatever – by entering into the Back Pay Agreement. Plaintiff contends that Local 1181 and Ochs wronged him by not requiring the employer to pay him the gross amount of his back pay, without setoff for taxes and unemployment benefits received, and MVT and Phanor wronged him by not paying him that gross amount.

The Amended Notice of Petition seeks a judgment "pursuant to cplr [sic] 7511 modifying award of an Arbitrator and directing that as modified, the award be confirmed and judgment be entered thereon." Similarly, the "Wherefore" clause of the amended petition seeks, among other things, "modification of the award of [the arbitrator] so petitioner can receive the back pay amount of $12,566.60 . . .." However, the amended petition itself does not assert any error in the arbitrator's award or seek any changes to it; rather, it alleges wrongdoing by defendants. Specifically, the amended petition asserts five causes of action. The first is labeled "Misrepresentation, Fraud, and Breach of Contract," against all defendants; the second is labeled "Breach of Fiduciary Duty" against the Union defendants and Phanor; the third is labeled "Malpractice" against the Union defendants, although it also, in its allegations, asserts a breach of fiduciary duty by these defendants; the fourth has no label but asserts that all defendants have been "unjustly enriched;" and the fifth, also unlabeled, asserts "conversion" against all defendants.

**DISCUSSION**

The most difficult task in this action is to properly characterize plaintiff's claim or claims. The confusion apparent in his state court petition has continued post-removal. He has not filed any opposition to the motions to dismiss, but after I denied his motion to remand, he filed a "Motion to Vacate or Set Aside Order and Remand Case to State Court," essentially, a motion to reconsider my Order denying remand.[1] It contains the following assertions:

- He was compelled to file the Article 75 proceeding in state court as opposed to some other procedure because he lacks the power to modify the arbitrator's awards and defendants also lacked the power to modify the arbitrator's awards;

- Defendants violated the arbitrator's awards by entering into the Back Pay Agreement, thus suggesting that the arbitrator's awards were sound but the defendants misapplied them in the Back Pay Agreement;

- Plaintiff agrees with me when I stated, in the Order denying his motion to remand, that "this case is a hybrid case" because the Back Pay Agreement "is akin to … an unfavorable arbitration award;"

- "The petitioner [plaintiff] repeats that this court has overlooked [that] the petitioner is seeking a modification pursuant to 7511(c) and not challenging the arbitration award."

As best as I can synthesize these statements, plaintiff is saying that while he is not challenging the arbitration award, his claim should be evaluated as if he is, because defendants' entry into the Back Pay Agreement is functionally the same as an adverse arbitration award.

Therein lies plaintiff's confusion. There is no authority for doing what plaintiff asks. The alleged wrongdoing between Local 1181 and MVT is not in any way the same as an adverse arbitration award or, more specifically, an award in need of "modification." Plaintiff acknowledges that the arbitrator gave him everything that he wants. It is the parties, according to him, that have deprived him of the benefit of his award. That contention does not trigger application of Article 75 or the Federal Arbitration Act, because the body of law under those

---

[1] Plaintiff's motion to vacate also appended a "Notice of Interlocutory Appeal."

statutes addresses only vacating or modifying the award itself, and not wrongdoing in the agreed-

upon implementation of the award by the parties to the arbitration proceeding.

So if plaintiff does not have the claims he thinks he has, and he does not, what, if any

claims, does he have?  In sorting this out, I start with a basic premise: I have to interpret

plaintiff's pleadings "to raise the strongest possible arguments they suggest."  Ortiz v. McBride,

323 F.3d 191, 194 (2d Cir. 2003).  "The policy of liberally construing *pro se* submissions is

driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on

the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent

forfeiture of important rights because of their lack of legal training.'"  Abbas v. Dixon, 480 F.3d

636, 639 (2d Cir. 2007) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

As noted above, plaintiff's strongest claim is not his claim analogizing defendants'

alleged misconduct to a requested modification of an arbitration award, as the law recognizes no

such analogy.  Nor is his strongest claim any or all of a free standing common law causes of

action for breach of contract, fraud, malpractice, or any of the other classic forms of action

whose labels appear in his petition.  Those claims are his most difficult and in fact fatally flawed

because they not only must have merit, but, as I held in my Order denying his motion to remand

and explain further below in connection with his motion for reconsideration, those claims must

first overcome complete preemption under Federal labor law.

Reading plaintiff's claim most liberally and giving it its strongest construction, it is, as

plaintiff appears to agree in some instances, a hybrid claim.  The Supreme Court has defined

such a claim thusly:

> It has long been established that an individual employee may bring suit against his
> employer for breach of a collective bargaining agreement.  Ordinarily, however,
> an employee is required to attempt to exhaust any grievance or arbitration
> remedies provided in the collective bargaining agreement.  Subject to very limited

judicial review, he will be bound by the result according to the finality provisions of the agreement. . . . [H]owever, we [have] recognized that this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding. Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. Yet the two claims are inextricably interdependent. To prevail against either the company or the Union … [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach of contract suit under § 301 . . . but a hybrid § 301/fair representation claim, amounting to a direct challenge to the private settlement of disputes under [the collective-bargaining agreement]. . . . [I]t has no close analogy in ordinary state law.

DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163-65, 103 S. Ct. 2281, 2290-91 (1983) (citations and quotation marks omitted).

Putting aside for the moment the question of whether plaintiff's hybrid claim has merit, it fits fairly comfortably within this definition. He is claiming that Local 1181 breached its duty of fair representation ("DFR") towards him by entering into the Back Pay Agreement, rather than insisting that MVT pay him the gross amount of his back pay. He is also asserting that MVT breached the CBA by not paying him the gross amount of his back pay, i.e., without deducting his unemployment benefits or withheld taxes, which constitutes to a failure to comply with a binding arbitration award. This is the strongest claim – indeed, it is the only claim – that the law permits him to assert against his union and his employer for their jointly depriving him of benefits to which he alleges entitlement under the CBA.

Moving on, then, to the evaluation of the merits of this hybrid claim, one point is immediately apparent – Ochs and Phanor have no place in it. Local 1181's duty of fair

representation does not encompass its employees or agents. The fact that Local 1181 owes a

duty to plaintiff does not mean that Ochs assumes that duty. To the contrary, Ochs owes plaintiff

no duty at all; her duty as attorney is to Local 1181. Section 301(b) of the LMRA provides that a

union is bound by the acts of its agents, as is the employer; but it expressly states that a claim

against a union cannot be asserted against its employees, and by implication, its agents or

attorneys. See 29 U.S.C. § 185(b).

As for Phanor, he is not a party to the CBA; MVT is. Only MVT can be sued for its

breach as part of plaintiff's hybrid claim. A disclosed agent of a contracting party cannot be

sued for breach of contract. See Mason Tenders Dist. Council Welfare Fund v. Thomson Const.

Co., 301 F.3d 50 (2d Cir. 2002) (signature by company president on collective bargaining

agreement did not make him liable for breach of the agreement); Ali v. Giant Food LLC/Stop &

Shop Supermarket Co., LLC, 595 F. Supp. 2d 618, 624-25 (D. Md. 2009) ("The law is well

settled that individual employees are not proper parties to a suit brought under § 301") (citing

Jackson v. Kimel, 992 F.2d 1318, 1325 n. 4 (4th Cir. 1993) (quoting Loss v. Blankenship, 673

F.2d 942, 946–47 (7th Cir. 1982))).

We then need to examine plaintiff's hybrid claim against Local 1181 and MVT.

Although, as explained above, there is a theoretical basis for the claim, it fails on the merits

because the Back Pay Agreement is entirely faithful to the arbitrator's awards. Contrary to

plaintiff's belief that he is entitled to a windfall – i.e., the gross amount of his back pay without

deduction for unemployment benefits he received or taxes that would have been withheld – the

arbitrator could not have been clearer that he did not want plaintiff to receive such a windfall:

"Where an employee receives income from any source that is in any way related to the loss of

employment, as opposed to passive income from savings or other investments, that amount

constitutes a deduction in the calculation of a make whole remedy." That is precisely what Local 1181 and MVT did when they agreed to deduct plaintiff's unemployment benefits. As to the deduction for withholding taxes that plaintiff would have been subjected to had he not been terminated (it is not entirely clear that plaintiff is challenging the Back Pay Agreement as to this aspect, but I am addressing it just in case), the arbitrator was equally clear: "… back pay is a term of art and means the amount the employee would have earned had he/she not been discharged less what the employee did earn." Plaintiff does not get to be placed in a better position than he would have been in had he not been wrongfully terminated. Rather, the arbitrator wanted him in the same position in which he would have been, and that is precisely what the Back Pay Agreement does.

Local 1181 did not breach its duty to fairly represent plaintiff by entering into the Back Pay Agreement, and MVT did not breach the collective bargaining agreement by entering into the Back Pay Agreement. Indeed, I can see no way of correctly implementing the arbitration awards other than through the Back Pay Agreement.

Finally, I will address plaintiff's motion for reconsideration of my Order denying his motion to remand. Like his motion to remand, plaintiff again relies on basic principles of removal procedure, e.g., the well-pleaded complaint rule and the usually-applied principle that plaintiff is the master of his claim and has pled only state law claims. His motion for reconsideration, however, simply disregards what I told him in the Order denying his motion to remand – claims by employees against their unions and employers are an exception to all of these typically-applied rules. No matter how plaintiff tries to phrase his claim to remain in state court, it is still a claim against his union for breach of its duty of fair representation and his

employer for breach of its obligation to comply with arbitration awards under the CBA. See generally Stephens v. 199 SEIU, AFL-CIO, 45 F. Supp. 3d 284 (E.D.N.Y. 2014).

Plaintiff's strongest argument is that his claim does not require any interpretation of the CBA, and thus the policy behind complete preemption – creating a uniform body of federal law interpreting collective bargaining agreements, see Livadas v. Bradshaw, 512 U.S. 107, 122, 114 S. Ct. 2068 (1994) (purpose of complete preemption is to avoid "common terms in bargaining agreements be[ing] given different and potentially inconsistent interpretations in different jurisdictions") – does not apply.

An overbroad reading of the case law could support this argument. In Vera v. Saks & Co., 335 F.3d 109 (2d Cir. 2003), for example, the employee filed a class action challenging the employer's practice of charging back returns against sales commissions, which allegedly violated the New York Labor Law. The Second Circuit found that the claim was preempted by section 301 because it required substantial interpretation of the collective bargaining agreement. Specifically, the Court had to decide whether the agreement altered the common law rule as to when sales commissions were earned. Nevertheless, the Court was careful to point out that not every case that is related to a collective bargaining agreement in some way would be subject to complete preemption:

> For example, if a state prescribes rules or establishes rights and obligations that are independent of a labor contract, actions to enforce such independent rules or rights would not be preempted by section 301. Nor would a state claim be preempted if its application required mere referral to the CBA for information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.

Id. at 115 (citation and quotation marks omitted). The Court further recognized that "[t]he boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive…." Id.

9

At first blush, this language would appear to support plaintiff's position that his claim is not subject to complete preemption. None of the parties to this case have pointed me to any provision of the CBA that requires "interpretation." Nevertheless, there are two related reasons why plaintiff's claim is clearly subject to complete preemption.

First, <u>Vera</u> did not involve a hybrid claim. It had nothing to do with the employees' union. When a claim against an employer is based on state or federal non-labor law and does not involve the union's alleged breach of a duty of fair representation, it is necessary to determine whether the collective bargaining agreement is necessarily, as opposed to only referentially, involved. However, that is not the case with a hybrid claim. In a hybrid claim, the part of the claim against the union and the part of the claim against the employer are each mandatory parts of the whole claim. "To establish a hybrid § 301/DFR claim, a plaintiff must prove both (1) that the employer breached [an agreement] [<u>e.g.</u>, a collective bargaining or settlement agreement] and (2) that the union breached its duty of fair representation vis-a-vis the union members." <u>White v. White Rose Food</u>, 237 F.3d 174, 178 (2d Cir. 2001).

This is important for the following reason. In a hybrid claim, where the union's breach of duty is as much at issue as the employer's breach of contract, the scope of the union's duty has to be determined as a matter of federal law. The same policy that requires a federal, uniform interpretation of collective bargaining agreements requires a uniform determination of the scope of a union's DFR. That is because the duty only exists under federal law, and even if some states were to impose an analogue, federal labor policy would prohibit potentially inconsistent state-by-state interpretations of the manner in which a union must represent its members. Thus, in a hybrid claim, whether the collective bargaining agreement plays a central or merely referential

role makes no difference; the court's need to approve or condemn the union's conduct must be done in light of federal case law defining the scope of that duty.

Relatedly, the need to interpret a collective bargaining agreement in a hybrid claim is not essential to complete preemption because the collective bargaining agreement is the very source from which plaintiff's claim springs. It is the *sine qua non* of the claim; without it, the employee would have no right to sue his employer at all. In this case, for example, absent the CBA, plaintiff would be an employee at will, MVT would have been able to fire him without recourse, and MVT would have had no obligation to participate in, let alone comply, with a neutral's evaluation of whether it properly terminated plaintiff and what the remedy should be for an improper termination. Thus, plaintiff's claim is that his employer failed to follow, at least, Article 13 of the CBA, which states: "The decision of the arbitrator shall be final and binding upon both parties." Because the right being asserted is not independent of the CBA, unlike Vega and other non-hybrid cases, there is no need to address the question of whether it is "close enough" to the CBA to trigger the concern for a uniform federal labor policy; rather, that concern is self-evident.

## CONCLUSION

Defendants' motions to dismiss are granted. Plaintiff's motion to vacate is denied. The Clerk is directed to enter judgment in favor of defendants, dismissing the case.

**SO ORDERED.**


_____
U.S.D.J.

Dated: Brooklyn, New York
        April 2, 2015